The opinion of the court was delivered by
White, J.
The Citizens’ Bank, being creditors of the defendant, secured by mortgage, seized, to enforce the payment of their claim, the mortgaged premises, a sugar plantation in the parish of St. Charles. Bush & Levert, who had made advances to Wiltz for the year 1877, and who were secured by a pledge under the act of 1874, intervened and claimed their privilege and pledge on certain sugar and molasses, as well as on the seed cane, corn, and a quantity of coal levied on along with the plantation. They also asserted the rights of various laborers, whom they claimed to have paid with express subrogation. There were several other interventions, which seem to have been abandoned, as they were not noticed by the judge of the lower court in rendering his judgment, and the controversy now before us is limited to the seed cane, corn, and coal. The evidence establishes that the quantity of seed cane is normal, less, in fact, than in the previous years, and that the quantity of corn is about what would be required for the necessities of the plantation. Under this state of facts the intervenors contend that their privilege and pledge of the crop covers the seed cane and corn for the following reasons :
First — Because their privilege under the act of 1874 is in the nature of a pledge importing possession, and, being one on the growing crop, included all the crop, even that portion usually reserved for seed or for the necessary conduct of the plantation.
Second — That the fact of these articles being immovables by destination does not render the privilege inoperative because the privilege on the growing crop is one on an immovable.
Third — That if the seed cane and corn by becoming immovables by destination are not liable to the privilege and pledge, then they could not so become because forming part of the growing crop they were as *245 such stricken, with the privilege and therefore could not be immobilized to the prejudice of the existing privilege and pledge.
1. The privilege on the “ growing crop ” we think only covered that which in the usual and ordinary sense of the words was to become merchantable crop, and was not intended to reach and did not apply to the immovables by destination which were a part of the realty, nor to that portion of the crop which in the normal course of things was never to become merchantable crop, but was intended to continue the immovables by destination necessary for the continued production of the realty. We think the parties must have contracted with reference to the known and indispensable usage of keeping from each crop the necessary seed -to continue production, as also the corn necessary to make that production possible. The terms of the contract accord with this view of the Intention of the parties. The obligation to ship the crop is expressed as follows : “ The entire crop of sugar and molasses and other marketable products made, produced, and gathered.” We do not take the words growing crop as found in the act of 1874 isolatedly, but we read them with reference to and in connection with the laws in pari materia, among which is the provision of C. C. 468, making certain designated articles immovables by destination, and that of O. P. 645, forbidding the seizure separately from the plantation of the articles therein enumerated. The act of 1874 was passed not only in the interests of merchants, but also in those of agriculture, and we can not so construe it as to destroy the very object of its being, The record admits that the seed cane and •corn had been used from year to year for the purposes of making the ■crops ; they entered into the crop and became as it were a debt due to the realty to be deducted before the fruotus or crop was ascertained. JPrucius non intelliguntur nisi deductus impensiis was the rule of the Roman law, and long anterior to the Code Napoleon, in 1649, the Pari, of Paris established the doctrine that the value of seed must be deducted before ascertaining the fructus, or crop. Journal des Audiences, tom. 1, p. 405.
2. If the crop quoad the pledge thereof under the act of 1874 was an immovable, it would be destructive of the very objects of the act, it would render the pledge of the crop impossible, for if the crop was an inseparable part of the realty possession of the latter would be necessary to that of the former; but such is not the case. True, by article 465 C. C. it is provided that “ standing crops and the fruits of trees not gathered and trees before they are cut down are likewise immovable and are considered as part of the land to which they are attached;” but the immovability provided for is only one in abstracto and without reference to rights on or to the crop acquired by other than the owners of the property to which the crop was attached. The immovability of a growing crop *246 is in the order of things temporary, for the crop passes from the state of a growing to that of a gathered one, from an immovable to a movable-. The existence of a right on the growing crop is a mobilization by anticipation, a gathering as it were in advance, rendering the crop movable quoad the right acquired thereon. The provision of our Code is identical with the Napoleon Code, 520, and we may therefore obtain light by an examination of the jurisprudence of France. When article 520, C. N., was reported by its authors to the Council of State it contained a proviso allowing the seizure of growing crops separately from the land-, which was stricken out on the ground that the immobilization referred to in the article was an abstract one, having no reference to rights of creditors or to rights acquired on or to the growing crop which could be mobilized by anticipation. Fenet, Discussion, Motif, vol 11, p. 10, 11, 12. This opinion, expressed and acted on by the compilers, has been adopted by the commentators : “ Enfin, dans le cas máme d’inhérence parfaite et perpetuelle au sol les produits peuvent se trouve meuble dans un certain cas. Ainsi, quand des grains, fruits, ou bois sont vendus sóparément du sol, c’est la une vente de meubles, et l’acheteur n’a qu’un droit mobilier. Oes objets, en effet, ne sont vendus que comme produits, comme choses distinctes du sol, et tant que devant étre separes de lui, dans la réalitó ils sont immeubles, mais ils sont cependant vendus comme meubles ; l’acheteur achote des choses encore immeubles, mais sous la condition et avec le pouvoir de les mobiliser.” Marcadé, vol. ii. p. 338. Our own jurisprudence recognizes the possible mobilization of a growing crop. Poché vs. Bodin, 28 A. 762 ; Sandell vs. Douglass, 27 A. 629. The pledge, then, of the growing crop was an anticipation of the mobilization of that which was to become movable, and not of the immovables by destination attached to the realty for its perpetual use and production.
3. The pledge on the growing crop, which was pro haovice a movaable, did not prevent the immobilization of the seed cane and corn, because their fictitious character of immovability had come into existence before the consenting of the pledge of the growing crop. As we have seen, the plantation' had from year to year produced seed and crop therefrom; had produced corn in like manner. The character of immovability of seed was not lost by the mere use of the seed to produce crop and hence to reproduce itself; nor was the immovability of the corn necessary for the cultivation of the crop destroyed by the use of the corn for its own reproduction. The reproduction was not an act of new immobilization, but the continuation of one previously made. Th© rule is thus stated by Laportein his Pandects Frangaises in commenting onO. N. 524, similar in most respects to our own : “We must understand by seed * * * * those destined to sow the ground, whi-eh results *247 from the word sowing, used by the law. That which is in excess of the quantity necessary for planting will be ordinary grain not covered by the legal fiction, and will therefore keep its real nature of a movable. Thus this immovable renews itself yearly and lasts until the seed is in the earth. We perceive that the fiction is established in the interest of agriculture, to prevent the farmer or proprietor from being deprived, either by a seizure or in any other way, of the seed required to plant his fields.” Vol. v. p. 57, No. 41; Duranton, vol. ii. p.230, Nos. 57 and 58.
The judge of the lower court concluded that the coal was not an immovable by destination, and as the crop had been manufactured we think he was correct. He rejected the claim of Bush & Levert to the seed cane and corn, in which conclusion we equally agree.
The judgment is affirmed.